2024 PA Super 255

| | | |
|---|---|---|
| CHONGQING KANGNING BIOENGINEERING CO., LTD, A DEREGISTERED CHINESE COMPANY | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| CONREX PHARMACEUTICAL CORP. | : : | |
| APPEAL OF: | : : | |
| CHONGQING KANGNING BIOENGINEERING CO., LTD AND ITS SHAREHOLDERS AND PURPORTED SUCCESSORS IN INTEREST, ZOU XIAOPNG AND ZHOU BANGLI | : : : : : | No. 2747 EDA 2023 |

Appeal from the Order Entered September 22, 2023
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-08925-CT

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

OPINION BY KUNSELMAN, J.:                **FILED NOVEMBER 1, 2024**

## I.     Introduction

In this international-commerce case, the Plaintiff, Chongqing Kangning Bioengineering Co., Ltd. ("CKB"), and its Shareholders, Zou Xiaopng and Zhou Bangli, appeal from the order dismissing CKB's complaint against Conrex Pharmaceutical Corp.  Following a bench trial, the Court of Common Pleas of Chester County ruled that it lost subject-matter jurisdiction after CKB deregistered under Chinese law.[1]  Because deregistration (or dissolution) of a

_____

[1] CKB was a Chinese company.  The parties agree that deregistration under Chinese law is the equivalent of business dissolution under Pennsylvania law.

business entity has no bearing on subject-matter jurisdiction, we reverse and remand for further proceedings.

## II.    Factual & Procedural Background

In 2019, CKB sued Conrex Pharmaceutical Corp., a Pennsylvania corporation, in Chester County.  CKB brought counts for breach of contract, unjust enrichment, conversion, and account stated.

Conrex filed various counterclaims, and CKB preliminarily objected.  The trial court ruled in favor of Conrex, and CKB appealed.  Reversing, this Court dismissed Conrex's counterclaims, because they were subject to arbitration.  *See Chongqing Kangning Bioengineering Co., Ltd. v. Conrex Pharm. Corp.*, 253 A.3d 293 (Pa. Super. 2021) (non-precedential decision).

On November 5, 2021, the trial court, *sua sponte*, stayed this case to allow Conrex an opportunity to arbitrate its counterclaims.  Conrex elected not do so.  Three months later, on February 1, 2022, CKB deregistered under Chinese law.  Then, in March of 2023, CKB moved to end the stay.  The trial court lifted the stay and scheduled a bench trial for July 18, 2023.

According to CKB's counsel, he first learned of his client's deregistration a few days prior to trial.  He informed Conrex's attorney and the trial court before the trial began.  At the close of evidence, the court made no decision.  Instead, it issued a rule to show cause directing CKB to demonstrate why Conrex "was not entitled to the relief requested." T.C.O., 7/21/23, at 1.  The trial court explained its show-cause order in the following footnote:

- 2 -

An examination of the Complaint and Answer reveals that [Conrex] has denied the averments set forth in paragraphs 3 and 4 of the Complaint[2] and constitutes a challenge to [the trial court's] jurisdiction. *See Drake Manufacturing Co. v. Polyflow, Inc.*, 109 A.3d 250 (Pa. Super. 2015). The parties will specifically address the jurisdiction of the trial court to proceed in this matter. Specifically, whether [CKB] is registered to do business in Pennsylvania pursuant to 15 Pa.C.S.A. §411 (in light of the numerous transactions between the parties in Pennsylvania, [CKB] acquiring [Conrex's] trademark, and [CKB] seeking [Conrex's] assistance in establishing operations in the United States and Canada.) *See* 15 Pa.C.S.A. §401, *et seq.*; 403; 411; 417 (status of foreign dissolution).

*Id.* at 1, n.2.

CKB filed a response and included a footnote to amend the complaint to substitute CKB's Shareholders as the plaintiffs. "As identified herein, to the extent necessary, [CKB] moves to amend its Complaint to identify Zou Xiaopng and Zhou Bangli as its successors/the Plaintiffs in this proceeding." Response to Trial Court's Rule to Show Cause at 1, n.1.

In addition, CKB indicated that Conrex never raised the issue of CKB's supposed lack of capacity to sue under *Drake Manufacturing*, *supra*, and therefore waived the issue raised in the show-cause order. Furthermore, CKB differentiated the question of subject-matter jurisdiction from the question of

---

[2] Paragraphs three and four of the complaint were boilerplate allegations. "3. Jurisdiction is proper in this court pursuant to 42 Pa. C.S. §§ 931, 5301. 4. Chester County is the proper venue because the transaction from which this dispute arises took place in this county, and [Conrex] regularly conducts business in this county." Complaint at 2. In response, Conrex pleaded, "3-4. The averments of the corresponding paragraphs consist of one or more conclusions of law and, as such, are deemed denied." Answer at 2. Conrex did not file preliminary objections challenging either jurisdiction or venue.

capacity to sue. It demonstrated that its causes of actions fell within the trial court's subject-matter jurisdiction, because they belonged to the class of cases that the trial court was competent to adjudicate. Lastly, CKB provided a "Foreign Law Opinion" from Yang Song, a Chinese attorney. Mr. Yang explained that, in his view, a deregistered Chinese company may continue actions to collect debts owed to it, via its former shareholders, acting as the real parties in interest.

Conrex answered that it contested subject-matter jurisdiction from the start of the lawsuit, because "this matter belongs in international arbitration in accordance with the parties' Collaboration Agreement . . . ." Conrex's Reply to CKB's Response to Trial Court's Order to Show Cause at 1. Conrex also claimed that CKB was no longer authorized to do business in its own country, let alone anywhere else. Because 15 Pa.C.S.A § 411 requires foreign corporations to be registered with the Secretary of State of Pennsylvania to sue in this Commonwealth, Conrex agreed with the trial court's suggestion that CKB could not pursue this action after it deregistered in China.

Regarding the motion to substitute Mr. Zou and Mr. Zhou as named-plaintiffs for CKB, Conrex argued that the Shareholders were strangers to the action who did not appear or verify any pleadings. It also claimed there was no evidence at trial proving CKB's ownership structure. Hence, in Conrex's view, Mr. Zou and Mr. Zhou could not show that they had standing to substitute for CKB.

The trial court heard oral argument on September 18, 2023. Three days later, the court entered an order entitled "DECISION," which it said was issued "pursuant to [its] Rule issued July 21, 2023," and dismissed CKB's lawsuit "for failure to join an indispensable party." T.C.O., 9/22/23, at 1. The show-cause order never mentioned the issue of nonjoinder of indispensable parties, nor did the trial court explicitly say who those supposedly indispensable parties were. Seemingly, the court meant the Shareholders whom CKB moved to substitute in response to the rule to show cause. The trial court found that the Shareholders presented insufficient evidence to substitute themselves for CKB.

CKB, Mr. Zou, and Mr. Zhou (collectively "Appellants") jointly appealed from the order.

The trial court filed a scathing Pennsylvania Rule of Appellate Procedure 1925(a) Opinion. It accused Appellants' counsel of "intentional failure . . . to disclose to the trial court that his [business-entity] client had been dissolved and was no longer in existence at the time of the non-jury trial on July 18, 2023." Trial Court Opinion, 12/18/23, at 1. "Any legal argument alleging error by the trial court . . . is without legal moment after considering this fraud perpetuated upon the trial court and the pursuit of a claim on behalf of a non-existent client." *Id.* at 1-2. The trial court then urged this Court to quash this appeal based on Appellants' failure to file post-trial motions. The court observed that it had labeled its order dismissing the action as a non-jury

decision. It therefore believed that Rule of Civil Procedure 227.1 compelled Appellants to file post-trial motions to perfect their appeal.

Additionally, upon docketing the appeal, this Court issued Appellants a show-cause order of its own. We asked why all their issues should not be dismissed as waived, given the lack of post-trial motions. Appellants filed a reply to our show-cause order and argued that the trial court dismissed based on its asserted lack of subject-matter jurisdiction, an issue immune to the penalty of waiver. This Court then discharged the show-cause order and deferred the question of waiver to this panel.

### III. Analysis

*A. Appellate Jurisdiction & Absence of Post-Trial Motions*

Before addressing the issues raised in Appellants' brief, we pause to consider (1) the trial court's request for quashal and (2) the issue of waiver in the show-cause order of this Court.

"Quashal [of an appeal] is usually appropriate where the order below was unappealable, the appeal was untimely, or the Court otherwise lacked jurisdiction . . . ." **Bronson v. Kerestes**, 40 A.3d 1253, 1255 (Pa. Super. 2012) (citation omitted) (quoting **Sahutsky v. H.H. Knoebel Sons**, 782 A.2d 996, 1001 (Pa. 2001)). By contrast, a party's "[f]ailure to conform with the requirements of rules of court is grounds for dismissal" of the appeal. **Id.** As such, the trial court's request that we quash due to the Appellants' failure to file post-trial motions is a challenge to the appellate jurisdiction of this Court.

While neither party objected to our jurisdiction, we will briefly respond to the trial court's jurisdictional concerns. "This Court may raise the issue of appellate jurisdiction *sua sponte.*" **Commonwealth v. Cross**, 317 A.3d 655, 657 (Pa. Super. 2024) (some punctuation omitted). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." **Id.**

Typically, appellate jurisdiction extends to "final orders of the courts of common pleas." 42 Pa.C.S.A. § 742. A final order "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).

Here, the appealed-from order dismissed CKB's complaint based on a supposed lack of subject-matter jurisdiction. It thereby disposed of all claims and all parties on procedural grounds. As such, the order met the definition of a final order to which our appellate jurisdiction extends. **See** 42 Pa.C.S.A. § 742.

Therefore, the trial court's suggestion of quashal was made in error. A party's failure to file post-trial motions does not deprive the appellate court of its jurisdiction to hear the appeal. Instead, as explained in this Court's show-cause order, the absence of post-trial motions raises the possibility of waiver of an appellant's issues. Hence, our appellate jurisdiction is properly vested, and we respectfully decline the trial court's request that we quash this appeal.

We now turn to the issue of whether Appellants' failure to file the post-trial motions results in waiver of their appellate issues, as raised in this Court's rule to show cause. "This Court may, *sua sponte*, determine whether issues

have been properly preserved for appeal." *G & G Investors, LLC v. Phillips Simmons Real Est. Holdings, LLC*, 183 A.3d 472, 476 (Pa. Super. 2018).

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020).

Following a jury verdict or non-jury decision, "failure to file post-verdict motions constitutes waiver of all issues on appeal . . . ." *G & G Investors*, 183 A.3d at 476. Pennsylvania Rule of Civil Procedure 227.1 governs the filing of post-trial motions. To determine whether post-trial motions are necessary, "we consider whether, under the circumstances of the action: (i) the plain language of Rule 227.1 makes clear a post-trial motion is necessary; (ii) case law provides a post-trial motion is necessary, even if Rule 227.1 is silent on the subject; and (iii) practicing attorneys would reasonably expect a post-trial motion to be necessary." *Id.* at 477.

Under the plain language of the Rule, a party has "ten days after . . . the filing of the decision in the case of a trial without a jury" to request post-trial relief from the trial court. Pa.R.C.P. 227.1(c)(2). Thus, in order for Rule 227.1 and its waiver penalty to apply, the trial court must first deliver a non-jury decision at the close of a trial. In most instances when a party has not filed post-trial motions, the question becomes whether the proceeding before the trial court constituted a trial.

Here, there is no doubt that the parties and trial court commenced a trial. However, what is less clear is whether that trial resulted in the "filing of

a decision." **Id.** The trial court headed the order dismissing the case for lack of subject-matter jurisdiction as a "DECISION." T.C.O., 9/22/23, at 1. This heading alone, however, does not necessarily mean that the order was a non-jury decision on the merits of whether CKB carried its burden of proof at trial.

Undeniably, "verdicts are rendered by a jury, whereas decisions are made by a trial judge" if the case is tried to the bench. **Sands v. Andino**, 590 A.2d 761, 764 (Pa. Super. 1991). Thus, following a bench trial, a non-jury decision is the procedural equivalent of a jury verdict.

Notably, here, the "DECISION" that the trial court entered did not decide any of the legal or factual issues raised at trial. The court never decided whether CKB carried its burden of proof on any of the counts in the complaint. Instead, the order resolved the separate and unrelated procedural question of whether the trial court lost subject-matter jurisdiction following CKB's deregistration under Chinese law. Clearly, questions of subject-matter jurisdiction are beyond the purview of any jury to render a verdict upon, because, as stated above, "[j]urisdiction is purely a question of law . . . ." **Cross**, 317 A.3d at 657.

"Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs." **Glover v. Junior**, 306 A.3d 899, 906 (Pa. Super. 2023), *appeal granted*, 314 A.3d 815 (Pa. 2024) (quoting **Domus, Inc. v. Signature Bldg. Sys. of PA, LLC**, 252 A.3d 628, 636 (Pa. 2021)). Subject-matter jurisdiction is "defined as the power of the

court to hear cases of the class to which the case before the court belongs, that is, to enter into inquiry, whether or not the court may ultimately grant the relief requested." **_Glover_**, 306 A.3d at 906 (2023).

By ruling that it lost subject-matter jurisdiction when CKB deregistered, the trial court held that CKB's deregistration divested the court of the power to hear contract cases and to enter into the inquiry on the merits. As such, the trial court never reached the merits of the trial, much less entered a non-jury decision resolving the issues of fact and law which the parties tried. Thus, the trial court never reached a decision. Instead, the trial court dismissed the case on jurisdictional grounds, a purely legal dismissal, outside the province of the finder of fact.

Thus, the heading on the order of "DECISION" was a misnomer, because the trial court ruled that it was legally **_incompetent_** to issue such a decision. Accordingly, the obligation to file post-trial motions does not apply to the appealed-from order, because, under the plain language of the Rule, a party must only file post-trial motions following the entry of a "decision in the case of a trial without a jury." Pa.R.C.P. 227.1(c)(2).

Instead, the court issued a jurisdictional order that disposed of all claims and all parties on procedural grounds – a final order that was immediately appealable. **_See_** Pa.R.A.P. 341(b), **_supra_**. Therefore, the Appellants' issues are immune from waiver under Pa.R.C.P. 227.1.

Their appellate issues are as follows:

1.     Did the trial court err as a matter of law when it dismissed [CKB's] complaint for failure to join an indispensable party, when Pa. R.C.P. 1032 states that "the court shall order . . . that the indispensable party be joined" where, as here, Appellant[s] expressly asked that the complaint be amended to substitute the two Shareholders as plaintiffs for the company.

2.     Whether the trial court erred as a matter of fact and law (including Chinese law) when it did not grant [CKB's] request to substitute its two Shareholders as plaintiffs.

3.     Whether the trial judge erred when he failed to recuse himself from the proceeding after he exemplified bias based on the national origin of [CKB] and its representative.

Appellants' Brief at 4. We primarily address the first issue, because it affords the Appellants relief.

*B.*    *Trial Court Subject-Matter Jurisdiction*

First, Appellants argue that the trial court erred by dismissing this suit based upon its perception that CKB failed to join indispensable parties. As mentioned, the trial court never expressly identified the indispensable parties, but presumably, it meant the Shareholders.

Appellants contend that the Shareholders tried to substitute themselves for CKB. They assert that, under Pa.R.C.P. 1032, the trial court "***shall order*** that the indispensable party be joined." ***Id.*** at 25 (emphasis by Appellants) (ellipses omitted). Thus, in their view, the Shareholders must be permitted to substitute themselves as the plaintiffs in place of CKB.

Appellants also claim that this Court's "remand instructions should include a direction that judgment be entered in [their] favor on the account stated claim." ***Id.*** at 27. However, they cite no law for the proposition that

this Court may order the trial court to render a non-jury decision in a party's favor, especially where, as here, Appellants made no motion for judgment as a matter of law in the trial court.

Conrex's reply is sparse. *See* Conrex's Brief at 6-7. It seemingly adopts the trial court's implied determination that the Shareholders were indispensable parties. Conrex argues that CKB "presented no evidence or testimony whatsoever at trial relating to [its] ownership structure, for an amendment of the pleadings to conform to." *Id.* at 7. "Rather, [CKB] asked the trial court to add unknown individuals to the action after the trial, simply accept their status as the Shareholders based merely on their identification as such by someone not affiliated with [CKB], and find that [Conrex] is liable to those unknown individuals." *Id.* As such, Conrex contends that the trial court properly refused to substitute the Shareholders for CKB.

By their reasoning, the trial court and Conrex would have it both ways. First, they claim that the Shareholders are indispensable parties, such that their nonjoinder deprived the trial court of subject-matter jurisdiction. But then, they claim that the Shareholders are strangers to this action who lack standing to substitute themselves as plaintiffs. Both contentions cannot be true; either the Shareholders are indispensable, or they lack standing. The conflicting positions of the trial court and Conrex are illogical and untenable.

Even so, it is unnecessary for us to decide whether the Shareholders are entitled to substitute themselves as plaintiffs for CKB, because the company's

deregistration had no impact upon the trial court's retention of subject-matter jurisdiction.

"Subject matter jurisdiction is a question that is not waivable and may be raised by a court on its own motion." ***Domus, Inc.***, 252 A.3d at 636. It presents a pure question of law; thus, "we review [it] *de novo*. Our scope of review is plenary." ***Glover***, 306 A.3d at 906.

This Court has held that the corporate dissolution (or its deregistration, as the process is referred to in China) of a litigant has no ramification upon pending litigation in this Commonwealth. As we explained:

> At common law, the dissolution of a corporation was its civil death; dissolution immediately **abated** all actions by and against a corporation and ended its capacity to sue or be sued. In Pennsylvania, under the Act of May 21, 1881, P.L. 30, and its amendments, dissolved corporations could "bring suits, and maintain and defend suits already brought, for the protection and possession of their property, and the collection of debts and obligations owing to, or by, them."

***Erdely v. Hinchcliffe & Keener, Inc.***, 875 A.2d 1078, 1083 (Pa. Super. 2005) (emphasis added).

Thus, under the common law, the dissolution of a business entity caused an abatement *ab initio* of any action to which the business entity was a party. It did not – and never has – stripped the court of subject-matter jurisdiction. If dissolution of a business entity had such a result, the trial court would, forever thereafter, be incompetent to hear any cases from the same class as the case to which the dissolved business was a party. Surely, the Court of Common Pleas of Chester County may continue to hear and pass judgment

upon any contract action, even though CKB ceased its commercial operations during the pendency of this litigation.

Indeed, the current version of the Act of May 21, 1881 specifically allows for this lawsuit to proceed to judgment and potential execution. The General Assembly of Pennsylvania has dictated, "Every business corporation that is dissolved . . . shall, nevertheless, **continue to exist** for the purpose of . . . prosecuting and defending actions or proceedings by or against it . . . ." 15 Pa.C.S.A. §1978(a) (emphasis added). As such, CKB continues to exist under Pennsylvania law for the limited purpose of prosecuting this case and, thus, retains its rights and standing as the plaintiff. Because CKB still exists for the duration of this litigation, the trial court mistakenly held that CKB failed to join the Shareholders as indispensable parties to replace itself. Moreover, there was no "fraud perpetuated upon the trial court [or] pursuit of a claim on behalf of a non-existent client." Trial Court Opinion, 12/18/23, at 1-2.

The trial court's determination that the deregistration of CKB stripped it of subject-matter jurisdiction effectively resurrected the common law of abatement *ab initio*. This was error. **See** 15 Pa.C.S.A. §1978(a).

Regarding the Appellants' request for judgment as a matter of law, such relief is inappropriate at this juncture. As explained above, because the trial court dismissed the case on jurisdictional grounds, it did not decide the factual questions presented during the trial. Thus, whether CKB was entitled to a decision in its favor on the facts, much less judgment as matter of law, is an open question. The Appellants' request for judgment as a matter of law is not

yet ripe for appellate review. If, upon remand, the trial court finds against CKB in its non-jury decision, the company may seek judgment as a matter of law in a post-trial motion.

In sum, CKB is entitled to relief from the trial court's ruling that CKB's deregistering under Chinese law divested the trial court of subject-matter jurisdiction. CKB's first issue warrants appellate relief.[3]

Order reversed. Case remanded with instructions for the trial court to issue a non-jury decision resolving the factual and legal questions that the parties presented at trial. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/1/2024

_____

[3] We dismiss the remaining appellate issues as moot and waived, respectively. The Appellants' second issue is whether the trial court erred by failing to substitute the Shareholders as plaintiffs for CKB. Because CKB continues to exist under Pennsylvania law for purposes of this litigation, the Shareholder-substitution question is moot.

In their third issue, the Appellants ask us to remove the trial judge based on alleged prejudice against Asians. However, CKB did not move for the trial judge to recuse himself. Generally, issues not raised in the trial court may not be raised for the first time on appeal. *See* Pa.R.A.P. 302(a). Recusal does not implicate subject-matter jurisdiction. Hence, the issue may not be raised for the first time on appeal. That said, nothing prevents CKB from requesting that the trial judge recuse himself following remand.